Gaston, Judge.
 

 The right of the plaintiff to recover upon the facts agreed, is resisted on three grounds.
 

 In the first place, it is insisted that the defendants were sureties for the official conduct of the sheriff for the year 1826, and that his refusal to surrender the body of
 
 Stephenson,
 
 or to pay the condemnation money adjudged against
 
 Stephenson,
 
 when the same was demanded many
 
 *414
 
 years afterwards, was not a breach of
 
 that
 
 bond. Sc-condJy, that if a breach was committed of the condition of that bond, action was not brought against the defendant within six years thereafter, as required by the act of 1810. And thirdly, that no demand had been made of their principal, to render the body of
 
 Stephenson,
 
 or pay the condemnation money, in as much as a writ of
 
 capias ad satisfaeiendnm
 
 to take the body of
 
 Stephenson
 
 for the satisfaction of that condemnation money, was not issued or X’eturned, as the law requires, before the
 
 sci. fa.
 
 sued out against their principal. The two first questions may be considered together, for the decision of the one necessarily involves the determination of the other.
 

 The act of
 
 1777, (Rev. eh.
 
 115,
 
 §
 
 16,) directs the sheriff whenever a writ of
 
 capias ad respondendum
 
 shall come .to his hands, to take from the defendant a bond with two sufficient sureties, in double the sum for which the defendant shall be held in arrest, and to return such bond with the writ; and declares that, in case the sheriff shall fail to take such bail,
 
 he
 
 shall be deemed and stand as special bail, and the plaintiff may proceed to judgment according to the rules thereinafter prescribed. Upon this statute a construction early obtained, that the sheriff had a right to become thus, special bail in every case, and this construction has been ever since steadily adhered to, and followed out to its necessary consequences. We cannot now permit ourselves to question the propriety of this construction, but feel bound to consider it as settled, and as carrying with it the results which are legitimately to he deduced from it. We hold it therefore to be the law, that the sheriff commits no breach of duty by failure to take a bail bond; that by returning the writ executed without a bail bond, he becomes bail for the defendant, is liable to all the obligations, and clothed with all the rights of such ; that this engagement is made by, and binding on him in his official character
 
 ;
 
 that this engagement is not violated until he fail
 
 to
 
 pay the condemnation money, or surrender the defendant, (his principal) upon a lawful demand, and that those who are bound as sureties for his official acts are
 
 *415
 
 responsible for this violation.
 
 (Swepson
 
 v.
 
 Whitaker,
 
 1
 
 Hay.
 
 224.
 
 Tuton v. Sheriff of Wake, Ib.
 
 435, and
 
 Goventor
 
 v.
 
 Jones,
 
 2
 
 Hawks,
 
 359).
 

 The cases of
 
 Stscpson
 
 v
 
 whit-of Wake, (lb. GovernorvJones
 
 (2
 
 Wa-wks,
 
 359)
 

 kins, (% Ilatoks, 394,J
 
 approved. The cases of Easíwoorf'
 
 ’(ante
 
 i
 
 voi. p. 157,) andFitts
 
 v
 
 Hato-
 

 The
 
 condition of the bond,
 
 “ well
 
 and truly to
 
 exe
 
 cute the duties of his office during his continuance therein,” is broken whenever an official act commenced du= bis term of office, and imposing upon him a
 
 continue jn<r
 
 duty, shall fail of consummation by his default, at whatever time sucli default may liappen. An ordinary jnstal!CC 0f this is when an execution has come to his hands while in office, and the money been received by virtue of it after his term, had expired. There can be no question that the condition of his bond is broken by the non-payment of the money so collected.
 
 (Governor
 
 v.
 
 Eastwood, ante 1st vol. p.
 
 157). Thus, also it was the case, of
 
 Fitz v. Hawkins,
 
 ( 2
 
 Hawks,
 
 394) that the sureties on the official bond of the sheriff, exe-cüj.c(i jf¡ were responsible, for the non-payment of those taxes which, by law, he could not begin to collect until April, 1821, and which lie was not-boundto pay over until October, 1821. The o^xce is regarded as continuing
 
 quoad
 
 any official obligation imposed or com. mcnced during Ids term, until such obligation shall be completely performed or'cxtinguished. "We.arc of opinion then, that the sureties for the year 1826, were res-, pousibie for the engagement of their principal as bail, officially contracted during the year 1826, and that no breach of this engagement took' place until tiie failure of their principal to surrender the body of
 
 Stephenson,
 
 or-to pay the condemnation money, when he was thereunto afterwards lawfully required.
 

 The
 
 remaining question is, has
 
 the bail of
 
 Stephenson
 
 been legally required to surrender his body, or to pay the condemnation money ? The act of
 
 1777,
 
 before referred to, enacts that all bail, taken according to the directions of that act, shall bo deemed held and taken to be special bail, and as such, liable to the recovery of the plaintiff, but the plaintiff shall not take out execution against such hail until an execution be first returned, that the defendant is not to be found in his proper conn
 
 *416
 
 ty, and until a
 
 scire facias
 
 hath been made known to the bail, and this the
 
 scire facias
 
 shall not issue until such execution hath been so returned. After the judgment was obtained in the original action against
 
 Stephenson,
 
 a
 
 capias ad
 
 satisfaciendum, formal and regular in all respects upon its face, did issue to the sheriff of the proper county, and was by him returned
 
 “
 
 not to, be found.” .But on this execution was indorsed a direction ‘the sheriff will collect costs only.’ It is insisted by the defendants that tills endorsement must be viewed as constituting a part of the execution, as much so as though it had been inserted in the writ, and that if it had been so inserted the writ would have been senseless, and necessarily nugatory. Such does not appear to us the effect of this endorsement. A writ of high efficacy, the import of which has been settled from remote antiquity, imposing well known duties, and followed by Well known and important consequences, is not to be annulled, or modified by a mere memorandum, accompanying or endorsed upon it. This endorsement could be regarded by the sheriff as no more than a personal instruction from the plaintiff, or his attorney, that the sheriff should forbear from executing the writ provided the costs were paid. The sheriff might probably, because of this instruction, have excused himself, if the costs had been paid, from proceeding to execute the writ.— Unquestionably however, the writ was a valid writ. — - It conferred
 
 fall power
 
 to take and to hold the defendants
 
 body for
 
 the satisfaction of the judgment. Had the body been
 
 taken,
 
 the bail would have been discharged. Had the body been taken and the prisoner discharged by the plaintiff, such discharge would have operated as satisfaction of the judgment. It being an execution which authorised the sheriff to take the body of the defendant, and the sheriff having made return thereon, that he could not find the body, all has been done which the law required as preliminary to the issuing of the
 
 sci. fa.
 

 Although the jury have returned their verdict subject to the opinion of the court upon a case agreed be
 
 *417
 
 tween the parties, yet .that verdict has not found, nor the case agreed stated, what judgment was to be rendered in the event of the law being, upon the facts agreed, jn favor 0f the plaintiff.
 

 This court can therefore do no more than reverse the judgment below, and order a new trial.
 

 Per Curiam. — Judgment reversed.